Essie ROLLINS, Plaintiff-Appellant,

v.

STATE OF FLORIDA DEPARTMENT OF LAW ENFORCEMENT, Defendant-Appellee.

No. 87–3610

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

March 23, 1989.

Ben R. Patterson, Patterson & Traynham, Tallahassee, Fla., for Rollins.

Lynda Quillen, Asst. Atty. Gen., Bruce A. Minnick, Mang, Rett & Collette, Tallahassee, Fla., for defendant-appellee.

Before TJOFLAT, HILL and EDMONDSON, Circuit Judges.

PER CURIAM:

This is a suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982). Appellant, Essie Rollins, alleges that the Florida Department of Law Enforcement (the FDLE) denied her promotional opportunities because she is black; she now seeks promotion and back pay.[1] At trial in the district court, the FDLE presented a non-discriminatory reason for denying Rollins' requests for promotion: that Rollins had disrupted the work place by repeatedly making spurious claims of racially disparate treatment in an extremely hostile and antagonistic manner. The district court, sitting without a jury, concluded that the FDLE had shown a legitimate, non-discriminatory reason for denying Rollins' request for promotion, and therefore entered judgment for the FDLE.

In this appeal, Rollins contends that the FDLE's reason for denying her promotion is precluded by section 704(a) of the Civil Rights Act of 1964,[2] which prohibits an employer from retaliating against an employee for complaining of racial discrimination. We disagree. In our view, section 704(a) does not give an employee a license to complain as Rollins did in this case.

I.

The district court found that Rollins began her employment with the FDLE in 1976 as a Classification of Crime Information Input Technician (CIIT)–I. In 1978, she was promoted to CIIT–II; she was still employed in that classification when this case came to trial in 1987. During her employment with the FDLE, Rollins frequently lodged informal complaints of discrimination with her superiors; she also filed formal charges of racial harassment against one of her supervisors with the Florida Commission on Human Relations (FCHR) and with the United States Equal Employment Opportunity Commission

1. Rollins also seeks such relief against James W. York, former Commissioner of the FDLE.

2. Section 704(a) is codified at 42 U.S.C. § 2000e–3(a) (1982). This action was brought also pursuant to the provisions of 42 U.S.C.

§ 1983 (1982), which provides a remedy for the deprivation of rights secured by the Constitution and laws of the United States. Rollins seeks relief under section 1983 for the violation of 42 U.S.C. § 2000e.

(EEOC).[3] Subsequent to her promotion in 1978, Rollins applied unsuccessfully for numerous other promotions within the FDLE.

In evaluating Rollins' Title VII claim, the district court applied the standards enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court found that Rollins established a prima facie violation of Title VII because she was a protected minority, was qualified for and applied for promotion, was rejected despite her qualifications, and other employees with equal or lesser qualifications who were not members of the protected minority were promoted instead. *See Mortensen v. Callaway*, 672 F.2d 822, 823 (10th Cir.1982) (applying *McDonnell Douglas* framework to discriminatory denial of promotion). The district court held, however, that the FDLE had successfully rebutted Rollins' claim by articulating a legitimate, non-discriminatory reason for denying her promotion—that the denial of promotion was based on the manner in which Rollins complained of discrimination, not on the fact that she complained.[4]

The record is replete with a variety of incidents which support the district court's determination. We briefly mention three of these. First, a number of witnesses testified that Rollins habitually bypassed the chain of command by bringing her complaints of discriminatory employment practices directly to the Commissioner of the FDLE, and on one occasion to the Governor of Florida, rather than to her unit supervisor, assistant supervisor, bureau chief, deputy director, or director. Rollins, moreover, refused to follow the avenues prescribed for lodging such complaints; though she knew that FDLE time sheets were not to be used for recording grievances, she frequently wrote her allegations of discrimination upon them. Second, the sheer number and frequency of Rollins' complaints of discrimination, most of which were plainly spurious,[5] was overwhelming. The district court cited the testimony of Alan Spradley, Rollins' unit supervisor since 1981, who said that he spent more time addressing Rollins' repeated complaints of racially discriminatory practices than those raised by all of his other employees combined. He testified that Rollins' constant complaining and unsupported allegations had a damaging effect on morale within his unit. Third, as Spradley detailed in his testimony, Rollins frequently expressed her complaints in an insubordinate and antagonistic manner. According to Spradley, on one such occasion Rollins called him a "fool" and told him "to look up the definition and it's accurate." Spradley also stated that Rollins told him that Charles Jacobs, the FDLE Director, was untrustworthy and that he "lie[d] with a straight face." Doris E. Jenkins, an FDLE staff counsel who handled many of Rollins' complaints, testified that "it was the atten-

---

**3.** The FCHR found that there was no basis to believe that Rollins had been discriminated against on account of her race. Similarly, the EEOC found no cause for Rollins' complaints of discrimination.

**4.** Under the *McDonnell Douglas* framework, once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to rebut the inference of discrimination by presenting a legitimate, non-discriminatory reason for denying the plaintiff her promotion. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant's burden of rebuttal, however, is "exceedingly light"; the burden is " 'merely one of production, not proof.' " *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir.1983) (quoting *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982)). If the defendant successfully rebuts the plaintiff's prima facie case, the plaintiff must carry the ultimate

burden of establishing by a preponderance of the evidence that a discriminatory intent motivated the denial of plaintiff's promotion. *Id.* at 1142. The plaintiff may meet this burden indirectly, by showing that the defendant's proffered explanation is pretextual, or directly, by showing that a discriminatory reason more likely motivated the denial of promotion. *Id.*

**5.** The district court mentioned as a typical example of one of Rollins' frivolous complaints an incident involving a social event planned during the football season. Some of the FDLE employees organized a "beer bash" to watch an "important" Florida State University football game on television. Rollins protested vehemently that equal treatment was not accorded Florida A & M University, a predominantly black university in Tallahassee. Her co-workers—many of them black—told her, "You're just making this a racial thing."

tion that Ms. Rollins was enjoying more so than looking for intermediate relief."

The testimony regarding these incidents led the district court to conclude:

> Defendants met their burden of rebuttal through evidence that failure to promote Rollins was due to her quarrelsome and antagonistic behavior and preoccupation that everything was racially motivated. Not only did defendants meet the light burden of rebuttal, but they proved their case far beyond a preponderance of the evidence. The evidence relating to Ms. Rollins compels the conclusion that in her career at FDLE she set herself up as the defender of black interests. In her zeal however, she permitted racial antagonism, not reason, to become her hallmark, with the result that any supervisor faced with the prospect of having to supervise her would have serious reservations and certain difficulty.

On appeal, Rollins argues that the district court erred in considering evidence concerning the insubordinate and disruptive manner in which she lodged her complaints.[6] Rollins bases her contention that complaining about racially motivated misconduct can never be a legitimate basis for the denial of a promotion, no matter the manner in which the employee complains, on the language of section 704(a) of the Civil Rights Act. Section 704(a) provides in pertinent part as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (1982). According to Rollins, if her complaints of disparate treatment are protected under the statute, then they can not serve in any way as a legitimate reason for refusing to promote her.

### II.

▮ In determining whether Rollins' conduct is protected under section 704(a), we recognize that the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like Rollins, who informally voice complaints to their superiors or who use their employers' internal grievance procedures. *See Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir.1981); *Sias v. City Demonstration Agency,* 588 F.2d 692, 694–96 (9th Cir. 1978). We also recognize that the statute shields an employee from retaliation regardless of the merit of her complaints so long as she can show a good faith, reasonable belief that the challenged practices violate Title VII. *See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1137 (5th Cir. Unit A Sept. 1981),[7] *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982). The only question before us, therefore, is whether the district court erred in holding that the hostile and disruptive manner in which Rollins complained of FDLE's allegedly illegal employment practices transgressed the bounds of the protection afforded by section 704(a).

▮ Though the legislative history of section 704(a) is murky,[8] it is well estab-

---

**6.** Rollins does not contend that the district court's findings of fact concerning her disruptive conduct are clearly erroneous. Rather, she contends that the court's findings on the issue are irrelevant.

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1982), this court adopted as binding precedent all decisions of the former Fifth Circuit, including Unit A, handed down prior to October 1, 1981.

**8.** As the First Circuit has noted:

> Neither in its wording nor legislative history does section 704(a) make plain how far Congress meant to immunize hostile and disruptive employee activity when it declared it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter...." The statute says no more, and the committee reports on the Civil Rights Act of 1964 and the Equal Employment Opportunity Act of 1963, which later became Title VII of the Civil Rights Act,

lished that the protection afforded by the statute is not absolute. This court has repeatedly recognized that some otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection. *See Payne,* 654 F.2d at 1142; *Whatley v. Metropolitan Atlanta Rapid Transit Auth.,* 632 F.2d 1325, 1329 (5th Cir. Unit B 1980); *Rosser v. Laborers' Int'l Union Local No. 438,* 616 F.2d 221, 223 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980). We have held that to qualify for the protection of the statute, the manner in which an employee expresses her opposition to an allegedly discriminatory employment practice must be reasonable. This determination of reasonableness is made on a case by case basis by balancing the purpose of the statute and the need to protect individuals asserting their rights thereunder against an employer's legitimate demands for loyalty, cooperation and a generally productive work environment. *See Payne,* 654 F.2d at 1145.

In applying this balancing test, our approach is consistent with those of our sister circuits which have addressed the issue. *See Jones v. Flagship Int'l,* 793 F.2d 714, 728 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Pendleton v. Rumsfeld,* 628 F.2d 102, 108 (D.C.Cir.1980); *Hochstadt v. Worcester Found. for Experimental Biology,* 545 F.2d 222, 231 (1st Cir.1976). *But see Curl v. Reavis,* 740 F.2d 1323, 1329 n. 5 (4th Cir.1984) (dicta).[9] If, under this balancing test, the manner in which the employee complains is found to be unreasonable, it falls outside the protection of the statute; the employee's conduct then may be deemed an independent, legitimate basis for the denial of her promotion.

■ The case before us thus "raises the question, put simply, of whether [the district court erred in finding that] plaintiff went 'too far' in her particular employment setting." *Hochstadt,* 545 F.2d at 231. We

conclude that it did not. The record reveals, and the trial court found, that FDLE denied Rollins' applications for promotions because she had earned the reputation as a disruptive complainer who antagonized her supervisors and colleagues and impaired the morale of her unit. Such conduct, even when associated with complaints of discrimination, has been held to fall outside the protection of section 704(a) and to provide the employer with a legitimate basis for its action. *See, e.g., Whatley,* 632 F.2d at 1329 (hostile and accusatory complaints of discriminatory practices and failure to follow established reporting procedures constituted legitimate reason for discharge); *Hochstadt,* 545 F.2d at 234 (constant complaints of discriminatory practices at inappropriate times and settings which damaged team morale constituted legitimate reason for discharge). We accordingly hold that the district court did not err in concluding that the manner in which Rollins presented her complaints provided the FDLE with a legitimate basis for denying her promotion.

The judgment of the district court is AFFIRMED.

---

repeat the language of 704(a) without any explanation. The proceedings and floor debates over Title VII are similarly unrevealing. Courts are thus left to develop their own interpretation of protected opposition.

*Hochstadt v. Worcester Found. for Experimental Biology,* 545 F.2d 222, 230 (1st Cir.1976) (citations omitted).

**9.** We note that the dicta in *Curl* has not been followed by any court, including the Fourth Circuit.